*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

**S T A T E   O F   M I C H I G A N**

**C O U R T   O F   A P P E A L S**

UNPUBLISHED
October 11, 2024
10:24 AM

*In re* VERELLEN, Minors.

No. 369832
Macomb Circuit Court
Family Division
LC Nos. 2022-000147-NA;
2022-000148-NA;
2022-000149-NA

Before:  RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right a February 20, 2024 order, which terminated his parental rights to his minor children, CV, HV, and IV. Respondent's parental rights were terminated under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury or physical abuse); (c)(*i*) (conditions that led to adjudication continue to exist); (g) (failure to provide proper care and custody); and (j) (reasonable likelihood the children will be harmed if returned to the parent).[1]  We affirm.

## I. BACKGROUND

In April 2022, respondent assaulted 13-year-old CV, leaving bruises and other marks that were consistent with child abuse. Respondent was criminally charged, and Child Protective Services (CPS) opened a case. After respondent refused to participate in services, petitioner, the Department of Health and Human Services (DHHS), filed a petition. The June 2022 petition alleged respondent demonstrated a pattern of violent and aggressive behavior toward CV, HV, and the children's mother. Though the petition did not allege that respondent was directly violent toward IV, the record reflects that IV was present in the home at the time that respondent assaulted CV and that cocaine was found in IV's backpack following a visit at respondent's home. It was

---

[1] The children's mother was not a respondent in the child protective proceedings and is not a party to this appeal.

further alleged that respondent (1) had a history with CPS, (2) had untreated mental health issues, and (3) refused to cooperate with services. It was also alleged that the children were afraid of him, and his parenting time was suspended in relation to divorce and custody proceedings that were ongoing between respondent and the children's mother. It was requested that the trial court authorize the petition and exercise jurisdiction. After a preliminary hearing, the trial court authorized the petition. The children were placed in the care of their mother under DHHS's supervision, and respondent's parenting time was suspended because of the seriousness of the allegations in the petition.

In November 2022, the adjudication trial commenced. After testimony was taken over several days, the parties agreed to amend the petition. Respondent pleaded to certain allegations contained in the amended petition. The trial court exercised jurisdiction and ordered that reasonable efforts toward reunification be made. After the initial dispositional hearing, respondent was ordered to comply with the parent-agency agreement, which required him to submit to a psychological and substance abuse assessment and to comply with, and benefit from, mental health therapy and parenting classes. Respondent was further ordered to submit to substance screenings, obtain and maintain suitable housing and a legal source of income, sign necessary releases, attend court hearings, and maintain contact with the caseworkers. Respondent was also ordered to resolve pending legal issues and lead a crime-free lifestyle.

Respondent pleaded *nolo contendere* to disturbing the peace in relation to the crime he committed against CV. Respondent was sentenced to a term of probation, which he violated during the child protective proceedings. Respondent was also criminally charged with breaking and entering property belonging to the boyfriend of the children's mother. Respondent failed to substantially comply with the parent-agency agreement or benefit from services. Respondent was consistently uncooperative with caseworkers, and his parenting time was suspended throughout the proceedings.

In July 2023, DHHS filed a supplemental petition for termination, again citing MCL 712A.19b(3)(b)(*i*), (c)(*i*), (g), and (j). It was alleged that DHHS had made reasonable efforts and termination was in the best interests of the children. In September 2023, a dispositional review and permanency planning hearing was held before a referee. The evidence demonstrated respondent's continued failure to comply with the parent-agency agreement, because he tested positive for methamphetamines, failed to attend parenting classes and therapy, and failed to provide proof of housing, among other things. The referee stated the termination hearing would be scheduled, but noted that respondent had time to demonstrate compliance in the interim. Respondent's parenting time continued to be suspended during this time because of his lack of compliance with the parent-agency agreement.

The termination hearing was held before the referee, and in February 2024, the trial court found grounds for termination were established under MCL 712A.19b(3)(b)(*i*), (c)(*i*), (g), and (j). The trial court also found termination of respondent's parental rights was in the children's best interests and reasonable efforts toward reunification were made. This appeal followed.

## II. SUSPENSION OF RESPONDENT'S PARENTING TIME

Respondent argues that the trial court violated MCL 712A.13a(13) by suspending his parenting time throughout the proceedings. We disagree.

### A. STANDARDS OF REVIEW

"We review de novo the interpretation and application of statutes and court rules. De novo review means we do not extend any deference to the trial court." *In re Ott*, 344 Mich App 723, 735; 2 NW3d 120 (2022) (citations omitted). We review a trial court's decision to suspend or modify parenting time for an abuse of discretion. *In re Laster*, 303 Mich App 485; 490-491; 845 NW2d 540 (2013), superseded by statute on other grounds as recognized by *In re Ott*, 344 Mich App at 738-741. "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 202; 848 NW2d 107 (2014) (quotation marks and citation omitted). A trial court also abuses its discretion when it makes an error of law. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). We review the trial court's findings of fact underlying legal issues for clear error. *In re McCarrick/Lamoreaux (On Remand)*, 307 Mich App 436, 463; 861 NW2d 303 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364195); slip op at 2.

### B. ANALYSIS

Several statutes and court rules concern parenting time in child protective proceedings. This Court has explained:

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*In re Ott*, 344 Mich App at 735-736 (quotation marks and citation omitted).]

Additionally, "[t]his Court construes court rules using the same principles that apply to the interpretation of statutory provisions. Court rules should be interpreted to effect the intent of the drafter, the Michigan Supreme Court." *Id*. at 737 (quotation marks and citations omitted). "Language contained in a court rule that is clear and unambiguous must be given its plain meaning and is enforced as written." *Id*. (quotation marks and citation omitted).

MCR 3.965(C)(7) states: "Unless the court suspends parenting time pursuant to MCL 712A.19b(4), . . . the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child." This Court has

previously held "MCR 3.965(C)(7)(a) only govern[s] parenting time from the preliminary hearing to adjudication and is not applicable once adjudication occurs. . . ." *In re Ott*, 344 Mich App at 737 (alterations in original; quotation marks and citation omitted). Additionally, under MCR 3.977(D), and the corresponding provision in MCL 712A.19b(4), "[i]f a petition to terminate parental rights to a child is filed, the court may suspend parenting time for a parent who is a subject of the petition." Respondent does not reference, let alone rely on, MCL 712A.19b(4), MCR 3.965(C)(7)(a), or MCR 3.977(D).

Rather, respondent relies on MCL 712A.13a(13), "which is tied to custody and placement orders after removal. . . ." *In re Ott*, 344 Mich App at 738. It applies both "before and after adjudication." *Id*. at 739. MCL 712A.13a(13) states:

> If a juvenile is removed from the parent's custody at any time, the court shall permit the juvenile's parent to have regular and frequent parenting time with the juvenile. Parenting time between the juvenile and his or her parent must not be less than 1 time every 7 days unless the court determines either that exigent circumstances require less frequent parenting time or that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being. If the court determines that parenting time, even if supervised, may be harmful to the juvenile's life, physical health, or mental well-being, the court may suspend parenting time until the risk of harm no longer exists. The court may order the juvenile to have a psychological evaluation or counseling, or both, to determine the appropriateness and the conditions of parenting time.

"Accordingly, . . . a parent is entitled to parenting time with a removed child unless it 'may be harmful to the juvenile's life, physical health, or mental well-being. . . .' " *In re Ott*, 344 Mich App at 739, quoting MCL 712A.13a(13). "If a juvenile is removed from the parent's custody at any time," a finding of harm is required before parenting time can be suspended.[2] See MCL 712A.13a(13).

The trial court did not clearly err when it found that allowing respondent to have parenting time, even if supervised, may be harmful to the children. Respondent has a history of child abuse, domestic violence, and aggressive behavior. The June 2022 petition was filed because respondent physically abused CV on April 1, 2022, and refused to cooperate with CPS or participate in services to remedy the safety concerns. Criminal proceedings in relation to the April 1, 2022 incident were pending when the petition was filed. In relation to those proceedings, a no-contact order was entered to prevent respondent from having contact with CV. CV and HV, who witnessed respondent abuse their mother and break her arm or wrist, stated they did not want to see respondent. Indeed, CV testified that they feared him. At the time of the June 21, 2022 preliminary

---

[2] We question whether the trial court actually removed the children from respondent's care and whether parenting time could have occurred if the trial court ordered it. Indeed, the Friend of the Court suspended respondent's parenting time before the June 2022 petition was filed. Additionally, an order was entered against respondent, preventing him from having contact with CV in relation to the criminal proceedings. This issue is not raised by DHHS, however.

hearing, respondent's parenting time was already suspended by the Friend of the Court in relation to the divorce and custody proceedings.

CV's and HV's trauma and psychological assessments reflected they were exposed to domestic violence and suffered from post-traumatic stress disorder (PTSD). HV was found to have impulse control issues which required a calm caregiver, who was not short-tempered or violent. HV's therapist opined parenting time with respondent would not be "good for [HV's] mental health." It was stated respondent may be granted parenting time if he complied with, and benefited from, the parent-agency agreement. Yet, the record showed that respondent only minimally complied and did not benefit from services. Respondent often failed to submit to random substance screenings, and he tested positive for methamphetamines once during the proceedings. Respondent did not complete parenting classes.

Psychological evaluations reflected that respondent's behavior and presentation were consistent with someone who has a personality disorder or disorders, including paranoid personality disorder, narcissistic personality disorder, and antisocial personality disorder. Supriya Singh and Dr. Franklin Sollars, who conducted the psychological evaluation and expressed concerns about respondent's ability to safely parent, recommended parenting time "be revisited after the help of long-term psychotherapy." However, respondent failed to submit to the necessary therapy. Respondent repeatedly blamed the children's mother, CPS, and the court system for the children being under the trial court's jurisdiction. Respondent was charged with another crime while the child protective proceedings were pending, and evidence supports he enlisted a neighbor or neighbors to monitor the home of the children and their mother. Being under surveillance frightened the children, and they did not want to play outside as a result of this situation.

Because respondent refused to follow the parent-agency agreement, a supplemental petition for termination of respondent's parental rights was filed. At that time, the trial court had the authority to suspend respondent's visitation under MCR 3.977(D) and MCL 712A.19b(4). After the supplemental petition was filed, respondent continued to refuse court-mandated treatments for his mental health and substance abuse issues, and thus, his parenting time continued to be suspended. At the time of the January 11, 2024 termination hearing, the legal guardian ad litem (L-GAL) reported the children feared respondent and did not want to see him.

Contrary to respondent's arguments on appeal, his parenting time was not suspended merely because of drug use. Cf. *In re Ott*, 344 Mich App at 742-743 (explaining a respondent's use of marijuana did not justify denial of her parenting time unless the trial court concluded that such parenting time may be harmful to the child). Rather, it was suspended because (1) respondent was uncooperative and aggressive; (2) respondent failed to comply with and benefit from services to address his mental health and anger management issues; (3) respondent refused to take accountability; and (4) the children, who were exposed to abuse and domestic violence at the hands of respondent, feared respondent and did not want to see him. The trial court did not clearly err by finding parenting time may be harmful to the children's lives, physical health, or mental well-being. It did not abuse its discretion or violate MCL 712A.13a(13) by suspending respondent's parenting time throughout the proceedings.

-5-

## III. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

Respondent argues the trial court clearly erred by finding a statutory ground to terminate his parental rights. We disagree.

### A. STANDARD OF REVIEW

"We review for clear error [a] trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364195); slip op at 2.

### B. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). The trial court in this case found grounds for terminating respondent's parental rights were established under MCL 712A.19b(3)(b)(*i*), (c)(*i*), (g), and (j). We conclude the trial court did not clearly err by finding termination of respondent's parental rights was proper under MCL 712A.19b(3)(j), which authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

During the 21-month proceedings, respondent failed to demonstrate he had suitable, stable housing. Indeed, respondent refused to allow DHHS to conduct a home inspection. Clearly, unsuitable living conditions would have traumatic effects on the children, who had already been exposed to traumatic events and desperately required permanency. Respondent, who was ordered to obtain and maintain legal income, testified that he had two jobs and provided for the children before the child protective proceedings commenced. In the weeks before the termination hearing began, respondent provided proof of employment to the caseworker. However, despite respondent's testimony that he maintained employment and that he was working 16 hours each day, at the time of the January 11, 2024 termination hearing, respondent was in arrears on his child support. Respondent did not offer an explanation as to why this was the case or claim financial hardship.

At the time of termination, respondent had a pending criminal charge and was on probation for assaulting CV. Although there were concerns that respondent abused substances because cocaine was found in IV's backpack and respondent tested positive for methamphetamines, he refused to comply with random drug screenings and did not receive substance abuse treatment because of his uncooperative behavior. Despite being referred to services to address respondent's mental health and anger management issues, respondent minimally complied with the parent-agency agreement, was argumentative, and refused to accept any fault in the instant proceedings, blaming the children's mother, the court, and CPS for his involvement instead. See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) ("a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned

to the parent's home") (quotation marks and citation omitted). Considering these facts from the record, the trial court did not clearly err in finding that respondent would not be able to safely parent the children.

Further, we do not find clear error in the trial court's conclusion that returning the children to respondent's care would cause them emotional harm. The record showed that both CV and HV were diagnosed with PTSD during the proceedings and had other special needs, which required their participation in services. It is unclear how respondent would provide for CV's and HV's special needs, and HV's therapist believed contact with respondent would cause HV additional emotional harm. The trial court found that respondent demonstrated a lack of concern for the children's feelings throughout the proceeding, which is evidenced by respondent's refusal to take responsibility and his decision to enlist a neighbor to spy on the children's mother even though it frightened the children. At the time of termination, respondent had not seen the children for 21 months. Importantly, the children, who had been exposed to respondent's abusive tendencies, were afraid of respondent and did not want to see him.

On this record, the trial court did not clearly err by determining that there was clear and convincing evidence that there was a reasonable likelihood, based on respondent's conduct, that the children would experience physical and emotional harm if returned to respondent. Thus, the trial court's finding that statutory grounds existed for termination of his parental rights was proper under MCL 712A.19b(3)(j). See *In re Pederson*, 331 Mich App at 473 (evidence of physical and emotional harm can be considered for purposes of MCL 712A.19b(3)(j)). Cf. *In re Baham*, 331 Mich App 737, 758-759; 954 NW2d 529 (2020) (holding that termination was improper under MCL 712A.19b(3)(j) where the respondent's behavior during parenting time was appropriate, the respondent was making plans to support herself, and the respondent was "compliant with services and was seeking out additional services").[3]

## IV. BEST INTERESTS

Respondent next argues the trial court clearly erred by finding termination of his parental rights was in the children's best interests. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, ___ Mich App at ___; slip op at 2.

---

[3] Because termination was proper under MCL 712A.19b(3)(j), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). To the extent we have considered them, we conclude the trial court did not clearly err.

## B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id.* This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

On the basis of the testimony presented, the trial court found that respondent and the children were not bonded. Even further, the court accepted record evidence and testimony that the children were afraid of respondent and did not want to see him. At the time of termination, the children had not seen respondent in 21 months. According to the record, CV and respondent could not see each other because a no-contact order was in place because respondent was convicted of a crime in relation to his abuse of CV. The trial court found that respondent, who has a history of domestic violence and aggressive behavior toward children and adults, failed to address his issues with mental health and anger management during the proceedings despite being offered services. It also found that respondent failed to address concerns about his substance use. The record shows that at the time of termination, respondent was in arrears on his child support, was on probation, and had a pending criminal charge. Respondent's housing situation was unknown to the court because of his lack of cooperation with DHHS.

Based on this evidence, the trial court found that respondent was unable to provide safety, long-term stability, and permanency for the children, which they required. The record reflected respondent's lack of commitment to completing services and often demonstrated an inability or unwillingness to get along with others. In sum, we find no clear error in the trial court's conclusion that no bond existed between respondent and the children, supporting its determination that termination was in the best interests of the children. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014) (holding because there was a "serious dispute on the record concerning whether [the respondent] had a healthy bond of any sort with her children," termination of her parental rights was in the children's best interests).

The parent-child bond is only one factor for the trial court to consider. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). As already discussed at length, respondent failed to address his extensive issues during the proceedings. Meanwhile, the children were doing well in their mother's home. Although the children were placed with a relative, which

weighs against termination, a best interest analysis requires consideration of the children's need for permanency and stability. See MCL 712A.13a(1)(j)(*i*) (defining "relative" to include an individual who is at least 18 years old and is "[r]elated to the child within the fifth degree by blood"); *In re Olive/Metts Minors*, 297 Mich App at 43 (holding a child's placement with relatives weighs against termination). The referee too acknowledged that, despite the children's placement with mother weighing against termination, "this alone cannot outweigh the imperative need for the termination of parental rights." Respondent was unable to provide safety, long-term stability, and permanency to the children, and "the parental rights of one parent may be terminated without the termination of the parental rights of the other parent. . . ." *In re Medina*, 317 Mich App 219, 232; 894 NW2d 653 (2016). The record evidence established that termination of respondent's parental rights was in the children's best interests[4] and we find no clear error in the trial court's analysis or decision in ordering termination.

## V. CONCLUSION

The trial court did not abuse its discretion or violate MCL 712A.13a(13) by suspending respondent's parenting time throughout the proceedings. The trial court did not clearly err by finding a statutory ground for termination existed and determining that termination was in the children's best interests. Affirmed.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[4] While the trial court's best interest analysis of IV is admittedly sparse, this Court has previously emphasized "the importance of keeping siblings together." *Wiechmann v Wiechmann*, 212 Mich App 436, 439; 538 NW2d 57, 59 (1995). "The sibling bond and the potentially detrimental effects of physically severing that bond should be seriously considered in custody cases where the children likely have already experienced serious disruption in their lives as well as a sense of deep personal loss." *Id*. at 439-440. Considering the record in this case, we agree with the trial court that the best interest factors support respondent's termination as to IV, and that it is in IV's best interest to remain in the same household as her siblings, CV and HV.